1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8  JENNIFER A. OVERBY,                                   NO.  C15-5499-RSM-JPD

9                              Plaintiff,

10          v.                                            REPORT AND
                                                         RECOMMENDATION
11  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,
12
13                              Defendant.

14          Plaintiff Jennifer A. Overby appeals the final decision of the Commissioner of the

15  Social Security Administration ("Commissioner") that denied her application for Supplemental

16  Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f,

17  after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18  the Court recommends that the Commissioner's decision be REVERSED and REMANDED

19  for further administrative proceedings.

20                      I.        FACTS AND PROCEDURAL HISTORY

21          Plaintiff is a 38-year-old woman with a high school diploma.  Administrative Record

22  ("AR") at 228.  Her past work experience includes employment as a photographer.  AR at 252.

23  Plaintiff was last gainfully employed in 2004.  *Id.*

24          On March 21, 2012, Plaintiff protectively filed a claim for SSI payments, alleging an

REPORT AND RECOMMENDATION - 1

1    onset date of June 23, 2006.  AR at 213-18, 223.  Plaintiff asserts that she is disabled due to

2    heart problems, thyroid cancer, hormonal imbalances, depression, headaches, back problems,

3    shortness of breath, and anxiety.  AR at 227.

4         The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 104-

5    07, 113-18.  Plaintiff requested a hearing, which took place on November 7, 2013, in

6    Columbus, Ohio.  AR at 41-76.  On December 11, 2013, the ALJ issued a decision finding

7    Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a

8    specific job existing in significant numbers in the national economy.  AR at 10-25.  Plaintiff's

9    administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6,

10   making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42

11   U.S.C. § 405(g).  On July 20, 2015, Plaintiff timely filed the present action challenging the

12   Commissioner's decision.  Dkt. 1, 3.

13                              II.      JURISDICTION

14        Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

15   405(g) and 1383(c)(3).

16                           III.      STANDARD OF REVIEW

17        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

18   social security benefits when the ALJ's findings are based on legal error or not supported by

19   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

20   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

21   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

22   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

23   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

24   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Overby bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

V.      DECISION BELOW

On December 11, 2013, the ALJ found:

1.      The claimant has not engaged in substantial gainful activity since March 21, 2012, the application date.

2.      The claimant's status post myocardial infarction, with residual angina compensated with medication management; headaches; dysthymic disorder; panic disorder with agoraphobia; and generalized anxiety disorder are severe.

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.      The claimant has the RFC to perform a range of sedentary work, as that term is defined in 20 C.F.R. § 416.967(a).  Specifically, the claimant can lift and carry ten pounds occasionally and five pounds frequently, stand and/or walk for four hours total, and sit for eight hours total in an eight-hour work day.  The claimant is precluded from working in environments involving concentrated exposure to respiratory irritants, such as odors, dust, fumes, gases and poor ventilation, and to working in environments involving concentrated exposure to extremes of temperature (less than 35 degrees Fahrenheit and/or more than 85 degrees Fahrenheit).  The claimant retains the capacity for "low stress" work that does not involve goal-based production; does not involve more than occasional changes in the work setting; does not involve more than occasional interaction with supervisors, workers, and the public; and that allows for up to five percent of the workday to be spent off task.

5.      The claimant is unable to perform any past relevant work.

6.      Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

7.      The claimant has not been under a disability, as defined in the Act, since March 21, 2012, the date the application was filed.

AR at 12-25.

VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Whether the ALJ erred in assessing medical opinion evidence; and

REPORT AND RECOMMENDATION - 5

1         2.     Whether the ALJ erred in discounting Plaintiff's credibility.

2    Dkt. 11 at 1-2.

3    VII.    DISCUSSION

4    A.    <u>The ALJ Erred in Assessing Some Medical Opinion Evidence.</u>

5         Plaintiff argues that the ALJ erred in discounting opinions provided by treating

6    physician Jennifer Dickerson, M.D.; and treating psychiatrist Walter Stearns, M.D.  Plaintiff

7    also argues that the ALJ erred in failing to address the opinion of examining psychologist Marc

8    Miller, Ph.D., and in failing to account for all of the limitations identified by State agency

9    reviewing psychologist Mary Hill, Ph.D., even though the ALJ purported to credit Dr. Hill's

10   opinion.  The Court will address each disputed opinion in turn.

11        1.     *Legal Standards*

12        As a matter of law, more weight is given to a treating physician's opinion than to that

13   of a non-treating physician because a treating physician "is employed to cure and has a greater

14   opportunity to know and observe the patient as an individual."  *Magallanes*, 881 F.2d at 751;

15   *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)*.*  A treating physician's opinion,

16   however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

17   disability, and can be rejected, whether or not that opinion is contradicted.  *Magallanes*, 881

18   F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

19   give clear and convincing reasons for doing so if the opinion is not contradicted by other

20   evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725

21   (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts

22   and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.*

23   (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her

24   conclusions.  "He must set forth his own interpretations and explain why they, rather than the

REPORT AND RECOMMENDATION - 6

1    doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

2    Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at

3    725.

4            The opinions of examining physicians are to be given more weight than non-examining

5    physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the

6    uncontradicted opinions of examining physicians may not be rejected without clear and

7    convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

8    physician only by providing specific and legitimate reasons that are supported by the record.

9    *Bayliss,* 427 F.3d at 1216.

10           Opinions from non-examining medical sources are to be given less weight than treating

11    or examining doctors. *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

12    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

13    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

14    Security Ruling 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996).  Although an ALJ generally

15    gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion,

16    a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

17    consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495

18    F.3d at 632-33.

19           2.      *Dr. Dickerson*

20           Dr. Dickerson wrote a narrative letter describing Plaintiff's treatment history and also

21    completed a physical capacity evaluation form opinion in June 2013.  AR at 609-11.  The ALJ

22    gave Dr. Dickerson's opinions partial weight, rejecting her opinion that Plaintiff was limited to

23    four hours of sitting per workday and that Plaintiff is likely to be absent from work at least five

24    days per month, finding those restrictions to be unsupported by objective evidence.  AR at 22.

1    The ALJ also indicated that Dr. Dickerson "relied quite heavily on the subjective reports of

2    symptoms and limitations provided by the claimant, and that she uncritically accepted as true

3    most, if not all, of what the claimant reported."  AR at 22.  The ALJ stated that because

4    Plaintiff's subjective reports were not entirely reliable (for reasons explained elsewhere in the

5    decision), Dr. Dickerson's reliance on those statements undermined the reliability of her

6    opinions.  *Id.*

7         Plaintiff argues that the ALJ erred in rejecting Dr. Dickerson's opinion about Plaintiff's

8    absenteeism, because the ALJ's reasons for doing so are not legitimate.  Dkt. 11 at 5.

9    Specifically, Plaintiff argues that the record shows that Dr. Dickerson performed many clinical

10   tests and was very familiar with Plaintiff's conditions due to frequent visits.  Dkt. 11 at 5-7.

11   That may be correct, but neither Dr. Dickerson nor Plaintiff cites any clinical evidence

12   specifically related to absenteeism.  Dr. Dickerson does not explain the basis for this opinion in

13   her narrative report, either.  AR at 609.  As noted by the Commissioner, Plaintiff's medical

14   records show that her cardiac condition was improving with treatment and medication (Dkt. 14

15   at 6-7), and Dr. Dickerson even recommended an increase in aerobic activity prior to writing

16   her opinion.  *See* AR at 566, 572.  Thus, the ALJ did not err when finding that Dr. Dickerson's

17   opinion as to Plaintiff's absenteeism was unsupported by the record.

18        This is a specific, legitimate reason to reject this portion of Dr. Dickerson's opinion.

19   *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a

20   treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

21   findings.").  Accordingly, the ALJ did not err in discounting Dr. Dickerson's opinion in this

22   regard.

23        3.    *Dr. Stearns*

24        Dr. Stearns completed a form opinion describing Plaintiff's mental RFC, after a few

months of psychiatric treatment with Dr. Stearns.  AR at 612-14.  Dr. Stearns described

marked and extreme limitations in Plaintiff's social functioning, and moderate limitations in

Plaintiff's concentration and persistence.  *Id*.  Dr. Stearns indicated that Plaintiff would not be

expected to be absent from work five or more days per month, but that her condition would

deteriorate if placed under stress.  AR at 614.

The ALJ found Dr. Stearns' opinion to be out of proportion to the remaining objective

evidence of record[,]" with "nothing in Dr. Stearns['] own reports relating to the claimant that

would support such limitations."  AR at 22-23.  The ALJ speculated that Dr. Stearns may have

felt pressured to provide an opinion to satisfy Plaintiff's requests.  *Id*.  The Court agrees with

Plaintiff that the ALJ's speculation as to the reasons why Dr. Stearns opined as he did is not a

legitimate reason to discount the opinion, but nonetheless finds support in the record for the

ALJ's finding that Dr. Stearns' opinion is inconsistent with his own treatment notes.  *See* AR at

616-21.

Plaintiff focuses her challenge to the ALJ's assessment of Dr. Stearns' opinion on the

speculative portion of the ALJ's reasoning, but does not establish that the ALJ's other line of

reasoning (as to Dr. Stearns' opinion being unsupported and inconsistent with the many less

severe findings in the treatment record) is erroneous, thereby failing to show harmful error in

the ALJ's reasoning.  Dkt. 15 at 4-5.  Plaintiff also mischaracterizes the Commissioner's

argument: the Commissioner does not contend that the ALJ's RFC assessment is consistent

with Dr. Stearns' opinion.  Dkt. 15 at 5.  Instead, the Commissioner argues that the ALJ

reasonably found Dr. Stearns' opinion to be unsupported.  Dkt. 14 at 8.  The Court agrees with

that argument, and accordingly finds no harmful error in the ALJ's assessment of Dr. Stearns'

opinion.

//

REPORT AND RECOMMENDATION - 9

1

4.    *Dr. Miller*

2

Dr. Miller performed a consultative examination of Plaintiff in June 2012 and wrote a

3

narrative report describing her symptoms and limitations.  AR at 527-32.  In her opening brief,

4

Plaintiff argues that the ALJ ignored Dr. Miller's opinion and "simply failed to address it."

5

Dkt. 11 at 10.  Plaintiff is incorrect.  The ALJ discussed Dr. Miller's opinion in detail, and

6

indicated that his RFC assessment was consistent with Dr. Miller's opinion.  AR at 14, 16-17,

7

18.  The Commissioner argues that the ALJ's discussion of Dr. Miller's opinion, as well as his

8

assertion that the RFC assessment is consistent with Dr. Miller's opinion, is sufficient

9

consideration of the opinion, even in the absence of a specific weight assigned to the opinion.

10

Dkt. 14 at 9.

11

Plaintiff argues in her reply brief that the ALJ did not adequately consider Dr. Miller's

12

opinion because the ALJ did not address the opinion that Plaintiff would have difficulty

13

dealing with the stress and pressure of work.  Dkt. 15 at 6 (citing AR at 531).  But the ALJ's

14

RFC assessment specifically limits Plaintiff to "low stress work," defined to mean work that

15

does not involve "goal-based production;" does not involve more than occasional changes in

16

the work setting, or more than occasional interaction with supervisors, co-workers, and the

17

public; and that permits up to 5% of the workday to be spent off-task.  AR at 18.  Dr. Miller

18

did not indicate what type of "difficulty" Plaintiff would have with stress and work pressure, or

19

indicate any particular functional limitations that would result.  AR at 531.  Plaintiff cannot

20

show that the ALJ's RFC assessment is inconsistent with Dr. Miller's opinion, and thus has not

21

shown error.  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir.

22

2010).

23

5.    *Dr. Hill*

24

Upon reconsideration by the State agency, Dr. Hill opined that Plaintiff's "psych

REPORT AND RECOMMENDATION - 10

1   [symptoms] will limit [concentration, persistence, and pace] and her ability to tolerate normal

2   work pressures.  [Plaintiff] able to perform 1-4 step tasks w/no multi-tasking and no strict time

3   limitations."  AR at 99.  Plaintiff argues that the ALJ did not adequately account for this

4   opinion in the RFC assessment, because the ALJ did not include all of the limitations opined

5   by Dr. Hill in the RFC assessment.

6          The Commissioner argues that the RFC assessment is not inconsistent with Dr. Hill's

7   opinion, and therefore adequately accounts for Dr. Hill's opinion.  Dkt. 14 at 10.  While the

8   Court found such an argument persuasive as to Dr. Miller's opinion, because Dr. Miller's

9   opinion was stated in more general terms and did not present a specific inconsistency with the

10  ALJ's RFC assessment, Dr. Hill's opinion is more detailed.  Dr. Hill specifically identified

11  functional limitations that would result from Plaintiff's psychiatric symptoms, and the ALJ did

12  not include those functional limitations in the RFC assessment or explain why those limitations

13  were not credited.  The ALJ's restriction on goal-based production quotas is arguably

14  consistent with Dr. Hill's opinion regarding "strict time limitations[,]" but the restrictions as to

15  1-4-step tasks and multi-tasking are not addressed in the ALJ's RFC assessment.  Some of the

16  jobs identified by the vocational expert (AR at 24) could be, however, consistent with a

17  restriction to 1-4-step tasks.  *See* DOT 713.687-018, 1991 WL 679271 (identifying the job as

18  requiring reasoning level 1 (involving one- or two-step tasks)); DOT 729.684-018, 1991 WL

19  679720 (identifying the job as requiring reasoning level 2 (involving "uninvolved written or

20  oral instructions).  The impact of a restriction on multi-tasking is not clear.

21         Accordingly, on remand, the ALJ shall reconsider Dr. Hill's opinion and either account

22  for all portions of the opinion, or provide reasons to discount it.

23  B.      The ALJ Did Not Err in Assessing Plaintiff's Credibility.

24

REPORT AND RECOMMENDATION - 11

The ALJ provided a number of reasons to discount the credibility of Plaintiff's subjective complaints. First, the ALJ found Plaintiff's allegations of an inability to work due to chest pain and shortness of breath to lack credibility in light of the medical evidence showing the stability of Plaintiff's symptoms and the evidence related to her activities, including traveling, volunteering, and household activities. AR at 19-20. Second, the ALJ found that Plaintiff's allegation of work limitations due to headaches lacked credibility because her minimal treatment was conservative in nature and no treating or examining physician ever opined that Plaintiff's headaches caused functional limitations. AR at 20. Lastly, as to Plaintiff's allegations of mental limitations, the ALJ found that Plaintiff's minimal, conservative treatment for psychiatric conditions, as well as Dr. Miller's opinion, indicates that her conditions are not as severe as alleged. AR at 20-21. The ALJ also referenced his findings at step two regarding the "paragraph B" criteria, as support for his finding that Plaintiff's mental functional limitations did not preclude work. AR at 21. The Court will consider each of Plaintiff's challenges to the ALJ's credibility rationale in turn.

1.   *Legal Standards*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by

objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.   *The ALJ's Rationale*

Plaintiff argues that the ALJ erred in assessing the credibility of her cardiac symptoms (chest pain and shortness of breath) for a number of reasons. First, Plaintiff argues that the ALJ misrepresented her allegations, because she never claimed to be completely incapacitated by her cardiac symptoms. Dkt. 11 at 12. The ALJ did not state that Plaintiff claimed to be unable to work due *solely* to cardiac symptoms; Plaintiff herself identified her cardiac symptoms as a reason she could not work. *See* AR at 49-50. The Court finds that the ALJ did not misrepresent Plaintiff's allegations.

Plaintiff also argues that the ALJ erred in relying on her daily activities to discredit her cardiac symptoms, because the ALJ did not explain how these activities either contradict her testimony or demonstrate transferable work skills. The Court agrees, and finds this line of reasoning to be erroneous. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities

REPORT AND RECOMMENDATION - 13

1   may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the

2   threshold for transferable work skills").  The ALJ also provided another reason to discredit

3   Plaintiff's allegations related to her cardiac condition — namely her conservative treatment

4   (AR at 19-20) — and Plaintiff does not challenge this portion of the ALJ's reasoning.  This

5   reason is clear and convincing.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir.

6   2008).  Accordingly, the ALJ's reasoning as to Plaintiff's daily activities is harmless error.  *See*

7   *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

8       Plaintiff does not challenge the ALJ's rationale with respect to her allegations of

9   headaches, but does dispute whether her minimal treatment for mental health complaints is a

10  convincing reason to discount her credibility.  Dkt. 11 at 14.  Plaintiff argues that the ALJ

11  should have considered whether her "inability to afford health care might provide an adequate

12  explanation as to why she had not received mental health treatment."  *Id*.  Plaintiff cites no

13  portion of the record suggesting that she did not receive treatment due to an inability to pay,

14  and speculation in a brief does not amount to substantial evidence.  Accordingly, Plaintiff has

15  not established error in this line of the ALJ's reasoning.

## VIII.   CONCLUSION

17      For the foregoing reasons, the Court recommends that this case be REVERSED and

18  REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

19  instructions.  A proposed order accompanies this Report and Recommendation.

20      Objections to this Report and Recommendation, if any, should be filed with the Clerk

21  and served upon all parties to this suit by no later than **March 22, 2016**.  Failure to file

22  objections within the specified time may affect your right to appeal.  Objections should be

23  noted for consideration on the District Judge's motion calendar for the third Friday after they

24  are filed.  Responses to objections may be filed within **fourteen (14)** days after service of

REPORT AND RECOMMENDATION - 14

1  objections.  If no timely objections are filed, the matter will be ready for consideration by the

2  District Judge on **March 25, 2016**.

3        This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

4  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

5  assigned District Judge acts on this Report and Recommendation.

6        DATED this 8th day of March, 2016.

7

8  _James P. Donohue_
   _____

9  JAMES P. DONOHUE
   Chief United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 15